IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>JONATHAN E. SCHUBERT,<br><br>                    Defendant. | CASE NO. 1:14 CR 122<br><br>JUDGE DAN POLSTER<br><br><br>OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS ORAL AND <u>WRITTEN STATEMENTS</u> |

      The United States of America, by and through its counsel, Steven M. Dettelbach, United States Attorney, and Adam Hollingsworth, Assistant U.S. Attorney, hereby responds in opposition to the Defendant's Motion to Suppress. For the reasons set forth in the attached memorandum, the United States respectfully requests that Defendant's motion be denied.

                                                Respectfully submitted,

                                                STEVEN M. DETTELBACH
                                                United States Attorney

                         By:    <u>s/Adam Hollingsworth</u>
                                   Adam Hollingsworth (MA: 660727)
                                   Assistant United States Attorney
                                   United States Court House
                                   801 West Superior Avenue, Suite 400
                                   Cleveland, OH 44113
                                   (216) 622-3781
                                   (216) 522-2404 (facsimile)
                                   Adam.Hollingsworth@usdoj.gov

## **MEMORANDUM**

On April 9, 2014, a federal grand jury sitting in Cleveland, Ohio, returned a four count indictment charging Jonathan E. Schubert with three (3) counts of armed bank robbery, in violation of Title 18, United States Code, Section 2113, and one (1) count of using and brandishing a firearm during a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii).

Defendant is challenging the sufficiency of the Miranda warnings Defendant received during a recorded interview following his arrest for robbing the PNC Bank located in North Olmstead on March 10, 2014. That day, however, law enforcement officers informed Defendant of his Miranda rights on four separate occasions, three orally and once in writing, to ensure that Defendant knew his rights. Defendant made the decision to speak to the officers with full knowledge of his rights, and therefore his statements should not be suppressed. Defendant's Motion should be denied.

## **FACTS**

**A.     Armed Bank Robbery of Sheffield Village PNC Bank on November 26, 2013**

On November 26, 2013, at approximately 11:00 a.m., the PNC Bank located at 5320 N. Abbe Road, Sheffield Village, Ohio, was robbed at gunpoint by a lone male, later determined to be Defendant. Defendant was armed with a black semi-automatic handgun, and wore jeans, a black hooded sweatshirt, black gloves, and a black mask which covered his whole face and head.

Defendant entered the bank quickly and immediately pointed his weapon at the bank employees. He held the weapon in his right hand, and a black backpack in his left. Defendant ordered two tellers to raise their hands above their heads, and ordered the bank manager to lay face-down on the floor. Defendant then handed the backpack to the tellers and ordered them to

put their money in it.  Defendant stole $4,324.00 from PNC Bank on this day, and confessed to this armed robbery during a video recorded interview with officers on March 10, 2014.

**B.      Armed Bank Robbery of Puritas Road PNC Bank on January 27, 2014**

On January 27, 2014, at approximately 2:09 p.m., the PNC Bank located at 15100 Puritas Avenue, Cleveland, Ohio, was robbed at gunpoint by a lone male, later determined to be Defendant.  Defendant was armed with a black BB gun, and wore jeans, a black hooded sweatshirt, black gloves, and a black mask which covered his whole face and head.

Defendant demanded money from the three tellers yelling, "Give me the money!" Defendant told the tellers to put the money on top of the counter.  The three tellers complied with the bank robber's demand for money.  Defendant walked up to one of the tellers and said, "Where is the large?"  The teller opened a second drawer and put more money on top of the money already on the counter.  Defendant put the money from the three tellers into his backpack and quickly exited the bank.  Defendant stole $6,434.00 from PNC Bank on this day, and confessed to this armed robbery during a video recorded interview with officers on March 10, 2014.

**C.      Armed Bank Robbery of North Olmstead PNC Bank on March 10, 2014**

On March 10, 2013, at approximately 9:18 a.m., the PNC Bank located at 4600 Great Northern Blvd, North Olmsted, Ohio, was robbed at gunpoint by a lone male, later determined to be Defendant.  Defendant was armed with a black BB gun, and wore jeans, a black hooded sweatshirt, black gloves, and a black mask which covered his whole face and head.

The Defendant approached the tellers, waved his gun in the air, and pointed the gun at the tellers while demanding money.  Defendant shouted "This is a robbery, put all your large bills on the counter!"  The tellers complied and placed U.S. currency onto the counter.  Defendant started

with one teller at the rear of the bank and went down the line taking money from all three tellers. Defendant fled the bank through the front entrance. Defendant stole $4,647.75 from PNC Bank on this day, and confessed to this armed robbery during a video recorded interview with officers on March 10, 2014.

**D.      Arrest and Interview of Defendant on March 10, 2014**

A witness in the bank's parking lot observed Defendant exit the passenger side of a vehicle dressed and acting in a suspicious manner. The witness took a photograph of the vehicle in case he or she was actually observing a bank robbery in process. Moments later, the witness observed Defendant run out of the bank, re-enter the vehicle, and speed off. The witness provided this information to responding officers, who located Defendant's vehicle in North Olmsted a short distance from the bank. Officers arrested Defendant, informed him of his Miranda rights, and transported him to the North Olmsted Police Department for questioning about the bank robbery. An inventory search of the vehicle discovered the stolen money, the backpack, the clothing worn by Defendant during the robbery (including a black mask, hooded sweatshirt, and gloves), and the weapon Defendant used during the commission of the robbery.

North Olmstead police officers informed Defendant of his Miranda rights twice. First, on the street when Defendant was placed under arrest. Second, Officer Sarniger informed Defendant of his rights again during the drive to the police department. Officer Saringer's practice is to provide the same oral Miranda warnings to every arrestee he encounters, from misdemeanor to felony suspects, and Officer Saringer followed his practice with Defendant on March 10, 2014. Defendant told Officer Saringer he understood his rights.

At the North Olmstead Police Department, Detective Charles Fioritto introduced himself and FBI Special Agent Michael Kurkjian. Defendant immediately started crying uncontrollably

4

and said "I'm sorry. I'm so sorry." Det. Fioritto gave Defendant a moment to gather himself saying, "Take a minute . . . Alright? We're going to give you a chance here to explain what happened, and what went on, alright? Before I start stuff, alright, before I start stuff, I've got to advise you of your rights, OK? This is the same thing I've already talked to Angela . . .[1]"

Defendant immediately started to tell the officers about Angela's lack of culpability, but Det. Fioritto interrupted Defendant to ensure that he received his rights before he started talking. Det. Fioritto said,

> Let me start with this Jonathan, alright? Your rights apply, OK?
> So you have a right to remain silent. Anything you say can and
> will be used against you in a court of law. You have a right to an
> attorney. You can stop answering questions at any time. OK, do
> you understand your rights?

Defendant looked up from his hands to nod his head yes. Det. Fioritto then asked, "You've been advised of your rights before?" Defendant again nodded his head yes. Finally, Det. Fioritto said, "If you're going to talk to us, explain to me what happened here…" Defendant proceeded to tell the officers about his involvement in the three above mentioned PNC bank robberies. After the interview, Det. Fioritto asked Defendant,

> Do you want to write something down? A statement about what
> you told us? . . . If you want to write something, it would be your
> words, your handwriting. That would go to the prosecutor,
> probably to the judge eventually . . . It's you telling your story,
> yourself . . . You don't have to. We can't tell you whether to do it
> or not.

---

[1] Det. Fioritto's interview of Angela Merrick was also recorded. He reminded her that he "advised her of her rights on the road" and "would do them again in a second." Det. Fiorrito then said, "Like I told you out there . . .you have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney. If you can't afford one, one will be appointed for you. And you can stop answering questions at any time. OK? And you understand your rights? OK."

5

Defendant asked, "What do I gotta to do, go through everything all over again?" Det. Fioritto responded,

> I'll give you a form here . . . it has your rights again, which I advised you of at the beginning, but they're written out here. So you put your initial here that we are advising you of your rights and that you understand them. And then you initial here that you want to make a statement. And from here you just write.

Defendant asked if he could have a cigarette, but was informed the facility was smoke free. Det. Fioritto asked him instead, "Do you need something else? Glass of water? Bathroom?" Det. Fioritto then provided Defendant with a standard North Olmstead Police Department "Statement Form" which includes the following written Miranda warning:

> Before making any statement or answer any questions, we wish to advise you of your Miranda Rights: You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to speak with an attorney. You have the right to have an attorney present during any type of questioning or written statement. If you can not (sic) afford an attorney, one will be appointed to you by the court. You can stop speaking to us, or stop writing your statement at any time.

The Statement Form asked Defendant to initial if "I have been advised of my rights and understand them." Defendant initialed this section. The Statement Form asked Defendant to initial if "I have been advised of my rights and understand them." Defendant initialed this section. Defendant started writing his statement as soon as the officers left the room.

## ARGUMENT

**A.   Law Enforcement Sufficiently Informed Defendant of His Rights by Administering Multiple Miranda Warnings**

The Constitution guarantees that, "[n]o person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const., Am. V. In the case of Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court recognized that custodial interrogations could deprive
6

Defendant asked, "What do I gotta to do, go through everything all over again?" Det. Fioritto responded,

> I'll give you a form here . . . it has your rights again, which I advised you of at the beginning, but they're written out here. So you put your initial here that we are advising you of your rights and that you understand them. And then you initial here that you want to make a statement. And from here you just write.

Defendant asked if he could have a cigarette, but was informed the facility was smoke free. Det. Fioritto asked him instead, "Do you need something else? Glass of water? Bathroom?" Det. Fioritto then provided Defendant with a standard North Olmstead Police Department "Statement Form" which includes the following written Miranda warning:

> Before making any statement or answer any questions, we wish to advise you of your Miranda Rights: You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to speak with an attorney. You have the right to have an attorney present during any type of questioning or written statement. If you can not (sic) afford an attorney, one will be appointed to you by the court. You can stop speaking to us, or stop writing your statement at any time.

The Statement Form asked Defendant to initial if "I have been advised of my rights and understand them." Defendant initialed this section. The Statement Form asked Defendant to initial if "I have been advised of my rights and understand them." Defendant initialed this section. Defendant started writing his statement as soon as the officers left the room.

## ARGUMENT

**A.   Law Enforcement Sufficiently Informed Defendant of His Rights by Administering Multiple Miranda Warnings**

The Constitution guarantees that, "[n]o person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const., Am. V. In the case of Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court recognized that custodial interrogations could deprive

suspects of their right against self-incrimination, unless given the "now familiar <u>Miranda</u> warnings . . . or their equivalent" before the individual is questioned.  <u>Rhode Island v. Innis</u>, 446 U.S. 291, 297 (1980).  The Court established these "procedural safeguards" to "give force to the Constitution's protection against compelled self-incrimination . . ."  <u>Florida v. Powell</u>, 559 U.S. 50, 59 (2010).

     Here, Defendant was not compelled to incriminate himself at any point.   Defendant was given <u>Miranda</u> warnings as many as four separate times, beginning at the time of his arrest for armed bank robbery, during his transportation to the police station, before his confession to three armed bank robberies, and before giving a subsequent written confession.[2]  Such repetition to the point of redundancy demonstrates the respect the officers had for Defendant's rights, contrary to the suggestions in his Motion to Suppress.  <u>See</u> <u>United States v. Weekley</u>, 130 F.3d 747, 751 (6th Cir. 1997) (affirming validity of <u>Miranda</u> warning where suspect "received his <u>Miranda</u> rights at the time of his arrest, was reminded of his rights during his transportation to the FBI's office [], and was again reminded of his rights while waiting for the elevator before questioning.").

     Defendant takes issue with the precise wording of one of the four recitations of the <u>Miranda</u> warnings.  Det. Fioritto's exact words are set forth above, but by this time Defendant

---

[2] Contrary to Defendant's suggestions, <u>see</u> Def. Mot. at 10-14, there is no "midstream <u>Miranda</u>" issue because <u>Miranda</u> rights were given both at the time of arrest and during transport. Moreover, the omission he takes issue with was at most an "oversight," and like the <u>McConer</u> case, "none of the facts . . . indicates a 'police strategy adapted to undermine the <u>Miranda</u> warnings' or indicates in any way that a reasonable person in [Defendant's] position would not have understood his constitutional rights."  <u>See</u> <u>United States v. McConer</u>, 530 F.3d 484, 497 (6th Cir. 2008) (distinguishing  <u>Missouri v. Seibert</u>, 542 U.S. 600, 616–17 & n. 6 (2004)) (noting officers in <u>Seibert</u> "had been specifically trained not to give <u>Miranda</u> warnings initially during interrogation, but rather to wait until after interrogation had produced a confession or other incriminating evidence.").  The case at bar bears no resemblance to those facts.  Defendant's "<u>Miranda</u> in the middle" argument ignores the fact that the written warning on the Statement Form was the fourth time officers informed Defendant of his rights.

had already received Miranda warnings on two other occasions, making Det. Fioritto's warning "needlessly repetitious."  See Martin v. Wainwright, 770 F.2d 918, 929-31 (11th Cir. 1985) (Miranda warnings adequate though detective recited only two of four warnings because defendant was reminded of full Miranda rights given a week earlier; additional warning "needlessly repetitious"), modified by 781 F.2d 185 (11th Cir. 1986); see also United States v. Bezanson-Perkins, 390 F.3d 34, 41-42 (1st Cir. 2004) (warnings adequate despite subsequent inaccurate statements regarding his rights because other officers already gave defendant accurate warning).  There is no requirement to remind a suspect of his rights continuously.  See United States v. White, 68 Fed. Appx. 535, 538 (6th Cir. June 5, 2003) (affirming denial of motion to suppress despite three day delay between warning and statement).

Moreover, the Supreme Court "ha[s] never insisted that Miranda warnings be given in the exact form described in that decision."  The Court noted "[i]n Miranda itself" that no rights are violated if suspect is provided "*a fully effective equivalent*."  See Duckworth, 492 U.S. at 202 (citing Miranda, 384 U.S. at 476) (emphasis in original).  See also Rhode Island v. Innis, 446 U.S. 291, 297 (1980) (referring to "the now familiar Miranda warnings ... or their equivalent"). The Court has repeatedly emphasized that "the 'rigidity' of Miranda [does not] exten[d] to the precise formulation of the warnings given a criminal defendant," and that "no talismanic incantation [is] required to satisfy its strictures."  See Duckworth, 492 U.S. at 202-03 (citing Prysock, 453 U.S. at 359.

The Court recognizes the reality of law enforcement and that "the officer in the field may not always have access to printed Miranda warnings, or he may inadvertently depart from routine practice . . ."  Id.  Therefore, courts "need not examine Miranda warnings as if construing a will or defining the terms of an easement.  The inquiry is simply whether the warnings reasonably

8

'conve[y] to [a suspect] his rights as required by Miranda.'" Id. (citing California v. Prysock, 453 U.S. 355, 361 (1981)).

Even assuming that Det. Fioritto's warning was the only one Defendant had received, rather than the third of four he received that day, several courts have rejected motions to suppress under similar circumstances.³ See, e.g., United States v. Warren, 642 F.3d 182, 185-87 (3d Cir. 2011) (Miranda warnings adequate though officer did not specifically tell defendant he had a right to counsel during interrogation); United States v. Harrell, 894 F.2d 120, 125 (5th Cir. 1990) (Miranda warnings adequate despite agent's erroneous statement that attorney would be furnished to suspect if matter went to trial); United States v. Miguel, 952 F.2d 285, 287-88 (9th Cir. 1991) (per curiam) (Miranda warnings adequate where officer told defendant he "may" have an attorney appointed if he could not afford one); United States v. Hernandez, 93 F.3d 1493, 1501-02 (10th Cir. 1996) (Miranda warnings adequate despite imperfect translation because essence of rights conveyed to defendant). Defendant was told that he had a right to an attorney. That right was not qualified in any way, either temporally or pecuniarily, and was communicated to him before he decided to speak to the officers. Even if the warning fell short of the required clarity, this was the third set of warnings he had received that day, and were "needlessly

---

³ The case relied upon by Defendant, United States v. Tillman, 963 F.2d 137, 140-41 (6th Cir. 1992) is distinguishable even under this counter-factual scenario because there, the suspect "was never told any statements that he would make could be used against him." Id. at 141. The Sixth Circuit explicitly recognized that this omission "poses a much more troublesome deviation from the traditional warnings [because] . . . [o]f all of the elements provided for in Miranda, this element is perhaps the most critical because it lies at the heart of the need to protect a citizen's Fifth Amendment rights." Id. The Sixth Circuit distinguished Tillman from Duckworth, where the Supreme Court held a Miranda "deviation" involving the attorney warning "was sufficient since defendant knew he had a right to counsel." Similarly, Det. Fioritto explicitly told Defendant he had a right to an attorney, and any omission did not involve the most critical element of Miranda.

repetitious." <u>Wainwright</u>, 770 F.2d at 929-31.  Defendant knowingly and voluntarily waived his right against compelled self-incrimination when he confessed to three armed bank robberies.[4]

## CONCLUSION

For the foregoing reasons the government respectfully requests that this Honorable Court deny Defendant's Motion to Suppress Evidence.

                                Respectfully submitted,

                                STEVEN M. DETTELBACH
                                United States Attorney

By:    s/Adam Hollingsworth
           Adam Hollingsworth (MA: 660727)
           Assistant United States Attorney
           United States Court House
           801 West Superior Avenue, Suite 400
           Cleveland, OH 44113
           (216) 622-3781
           (216) 522-2404 (facsimile)
           Adam.Hollingsworth@usdoj.gov

---

[4] Defendant suggests that he was "high on heroin" at the time of his confession.  <u>See</u> Def. Mot. at 5.  The Sixth Circuit has recently addressed this issue and held that "the important inquiry is whether the interviewing officers perceived there to be any 'impairments' to a knowing and intelligent waiver, when the totality of the circumstances are considered."  <u>United States v. Hampton</u>, 2014 WL 3452381, at *5 (6th Cir. July 15, 2014).  Here, Defendant was lucid, responsive, and articulate throughout the questioning, and there was no obvious impairment.  This Court should reject any suggestion that his waiver was not knowing and voluntary because of his drug use.

## CERTIFICATE OF SERVICE

    I hereby certify that on September 5, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

                                                                     s/Adam Hollingsworth
                                                                     Adam Hollingsworth
                                                                     Assistant U.S. Attorney